IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PITTSBURGH LOGISTICS SYSTEMS, INC. | ) ) | |
| Plaintiff, | ) ) | Civil Action No. 17-1667 |
| v. | ) ) | Judge Cathy Bissoon |
| LANDSTAR RANGER, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORADNUM AND ORDER

## MEMORANDUM

Pending before the Court is Defendant Affiliated FM Insurance Company's ("AFM") Motion to Dismiss (Doc. 3) and Defendant Landstar Ranger, Inc.'s ("Landstar") Motion to Dismiss (Doc. 7). For the reasons that follow, AFM's Motion to Dismiss will be **GRANTED**; and Landstar's Motion to Dismiss will be **GRANTED** in part and **DENIED** in part.

## BACKGROUND

Plaintiff, Pittsburgh Logistics Systems, Inc., brings this breach of contract action against Landstar Ranger, Inc. ("Landstar"). See generally, Compl. (Doc. 1-2).

In relevant part, Plaintiff alleges the following. Plaintiff contracted with Balcan Plastics LTD ("Balcan") to coordinate shipping environmental equipment from a third-party site to Balcan's facility. Id., at 9. Acting as the logistics coordinator, Plaintiff subcontracted the shipping services to Landstar through a "Motor Carriage Services Contract" ("Services Contract").[1] Id., at ¶ 5, 6. Landstar then breached the Services Contract in at least two ways.

---

[1] Plaintiff does not allege that Balcan contracted with Plaintiff to perform any task other than coordinating the shipment of Balcan's environmental equipment with a third party.

1

First, Landstar failed to adequately pick up and deliver the environmental equipment as the Services Contract required. Id., at ¶ 13. Second, Landstar's truck collided into a bridge—which damaged Balcan's equipment—while in route to Balcan. Id., at ¶¶ 15-17. Balcan's insurer, AFM, covered the cost for the equipment's inspection and replacement, but did not cover Plaintiff's invoices for transportation services totaling $114,051.14. Id., at ¶ 19-20. AFM also failed to cover incidental delay and other "consequential damages." Id., at ¶ 20.

The Services Contract to which Plaintiff and Landstar entered limits liability and states as follows:

> Rider D – Except as otherwise provided, CARRIER'S liability for consequential damages resulting from unreasonable delays in transit shall be subject to a maximum amount not to exceed $5,000 per shipment of actual damages sustained or expenses incurred.

Doc. 3-1. On these facts, Plaintiff asserts that Landstar is liable for actual and consequential damages stemming from Landstar's alleged negligence and breach of contract. Id., at ¶ 27. Further, Plaintiff claims third-party beneficiary status to Balcan's insurance contract ("Policy") (Doc. 3-2) with Balcan's insurer, AFM. Id., at 45. Lastly, Plaintiff claims that AFM unreasonably denied a portion of Balcan's insurance claim, resulting in $168,544.86 in unrecoverable damages to which Plaintiff is entitled. Id. at ¶ 44.

## ANALYSIS

### I. Plaintiff's Damages Claim.

Among other things, Landstar argues that Plaintiff's cause of action prematurely asserts a contribution claim for damages that Plaintiff has yet to incur. See (Doc. 17) at 1. The Court agrees. Excepting certain consequential damages, Plaintiff's damages claims against Defendants for losses sustained to Balcan's equipment, as well as incidental delay damages, are premature.

Pennsylvania law defines what is necessary for a party to state a breach of contract claim: "1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resulting damages." Walker Company, Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002) (quoting Williams v. Nationwide Mut. Ins. Co., 750 A.2d 881, 884 (Pa.Super. 2000)). To sustain a claim for breach of contract, Plaintiff must adequately allege damages. Id.

Portions of Plaintiff's damages claims are speculative. Plaintiff argues that AFM and Balcan could sue Plaintiff for damages sustained to Balcan's equipment and incidental delay damages due to Landstar's breach of contract and/or negligence.[2] Yet Plaintiff, at this juncture, has not alleged that Balcan or AFM have actually sued Plaintiff for damages.

In essence, Plaintiff seeks contribution from Landstar for potential damages it may suffer should Balcan or AFM choose to sue Plaintiff for Landstar's negligence. Plaintiff's premature contribution claim, however, is not ripe for the Court's adjudication. "[T]he right of contribution is a quasicontractual right arising by reason of an implied engagement of each to help bear the common burden." Builders Supply Co. v. McCabe, 77 A.2d 368, 375 (Pa. 1951). "[N]o cause of

---

[2] Plaintiff attaches a piece of correspondence to its Opposition (Doc. 15-4) from AFM that demands payment for the loss sustained to Balcan's equipment. In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993). A document forms the basis of a claim if the document is "integral to or explicitly relied upon in the complaint." Burlington Coat Factory, 114 F.3d at 1426 (emphasis omitted). Plaintiff, however, does not mention AFM's demand in its Complaint, and it is not integral to Plaintiff's claim. Therefore, the Court need not determine whether AFM's demand ripens Plaintiff's premature contribution claim.

3

action for contribution arises until one obligor pays more than his just share of the common obligation. Wilner v. Croyle, 252 A.2d 387, 391 (Pa. 1969). Before "the issue of contribution and indemnity is [] ripe for resolution," the plaintiff must have suffered some harm. Glob. Ground Support, LLC v. Glazer Enters., Inc., No. 05-4373, 2006 U.S. Dist. LEXIS 2434, at *38 (E.D. Pa. Jan. 23, 2006); see also, Keybank Nat'l Ass'n v. Reidbord, Civil Action No. 05-144, 2005 U.S. Dist. LEXIS 29936, at *15-*16 (W.D. Pa. Nov. 28, 2005) (finding that because a claim for contribution by a plaintiff is not viable until judgment has been made, claiming contribution before plaintiff is held liable, pays out any damages or suffers any harm is a premature claim); Hotel Emples. & Rest. Local No. 274 Health & Welfare Fund v. Stadium Hotel Rest. Grp., No. 10-1279, 2012 U.S. Dist. LEXIS 40627, at *10-*11 (E.D. Pa. Mar. 26, 2012) (holding that when a plaintiff has not been held liable, has not been ordered to pay damages and has not suffered the damages sought, plaintiff has not been harmed and a contribution claim is premature and invalid).

Plaintiff posits that it may be liable over to Balcan and/or AFM for damages resulting from Landstar's conduct. But until Balcan or AFM sue, Plaintiff has not been damaged from Landstar's failure to deliver on its contractual promises or its negligent performance.[3] If Balcan

---

[3] The Federal Rules of Civil Procedure do not include a provision allowing plaintiffs to sue third parties in the face of threatened litigation without being first named as a defendant. The Federal Rules of Civil Procedure, however, do permit defendants to implead a person "who is *or may be liable* to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." (emphasis added.) Rule 14(a) "permits a defendant to bring in a third-party defendant even though the defendant's claim is purely inchoate—*i.e.*, has not yet accrued under the governing substantive law—so long as the third-party defendant may become liable for all or part of the plaintiff's judgment." Andrulonis v. United States, 26 F.3d 1224, 1233 (2d Cir.1994). See also IHP Industrial, Inc. v. Permalert, ESP, 178 F.R.D. 483, 487 (S.D.Miss.1997) ("Rule 14 does not require that the third-party plaintiff await the outcome of the plaintiff's claim against it before it may assert its third-party claim" even when the defendant's cause of action for indemnity has not yet arisen under state law).

and/or AFM so choose, they can sit on their damages claim against Plaintiff. In that instance, the statute of limitations would eventually run and Plaintiff would not be liable to Balcan and/or AFM for any damages. Because the Court cannot determine for certain whether Plaintiff will have an actual damages claim against Landstar until Balcan or AFM files suit, Plaintiff's claim for future damages that have not yet incurred is not ripe for resolution.

Plaintiff also asserts a claim for lost revenue (unpaid invoices) stemming from Landstar's alleged breach of contract. Damages suffered from lost revenue are potentially recoverable as consequential damages. "Recoverable incidental or consequential damages must be the direct and foreseeable results of the breach." Fortney v. Tennekoon, Civil Action No. 95-4685, 1998 U.S. Dist. LEXIS 3926, at *32 (E.D. Pa. Mar. 12, 1998). Plaintiff alleges that Landstar's breach prevented Plaintiff from collecting $114,051,14 in invoices from Balcan. Compl., ¶¶ 20, 27. The unpaid invoices constitute lost revenue from which Plaintiff could have potentially profited. Plaintiff's potential profit loss was a direct and foreseeable result of Landstar's breach; thus, these damages are available for recovery as consequential damages:

> Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are lost.

Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc., 453 F. App'x 174, 179-80 (3d Cir. 2011) (quoting Penncro Assocs., Inc. v. Sprint Spectrum, L.P., 499 F.3d 1151, 1156 (10th Cir. 2007). Landstar's failure to perform inhibited Plaintiff from recovering on its contract with Balcan. Therefore, the profits that Plaintiff lost because Landstar breached the Services Contract are consequential lost profit damages.

Accordingly, Plaintiff's claims for damages that depend on future suit and future damages are not ripe for resolution. The Court dismisses Plaintiff's Count's I and II without prejudice—to the extent that Plaintiff claims damages other than those incurred from unpaid invoices. But Plaintiff has stated a valid claim for lost profit damages.[4]

## II. Oral Contract/Limitation of Liability

At first blush, Plaintiff's allegation that Plaintiff and Landstar entered an oral agreement seemingly is at odds with the allegation that Plaintiff and Landstar entered a Services Contract. Plaintiff alleges that "Landstar breached the oral agreement by failing to pick up the equipment from Ship & Shore on the specified date, failing to deliver the equipment to Balcan on the specified date, and by damaging the equipment while in transit." The Services Contract is an agreement to which PLS agrees to periodically use Landstar for transportation services. Doc. 3-1. The Services Contract does not mention the terms for the Balcan shipment or any other specific shipments. Id.

The Services Contract contains an integration clause essentially precluding the parties from modifying the Services Contract unless set forth in an addendum. Id. Further, the Services Contract states that there are "no oral representations . . . affecting this instrument and that any future representation, agreements, understandings or waivers must be reduced to writing in order to be binding upon the parties." Id. Thus, the Services Contract clearly contemplates that the terms for the individual shipments be reduced to writing. Specifically, the Services Contract contemplates that an Addendum is the only means of setting forth additional terms to the Services Contract. Id. The Court finds that Plaintiff has failed to even allege that a valid

---

[4] The Court notes that $114,051,14 in invoice revenue may not be equal to actual profits that Plaintiff would have received.

6

contract was in place for the Balcan shipment. Despite the Services Contract's clear language requiring modifications to be in writing, Pennsylvania law allows oral modification. ADP, Inc. v. Morrow Motors, Inc., 969 A.2d 1244, 1250 (Pa. Super. Ct. 2009) (["A] written contract may be orally modified, even when the contract expressly provides that modifications must be in writing. […]"). Thus, the Court finds that Plaintiff adequately alleged an oral agreement that modified the Services Contract to incorporate the terms of the Balcan shipment.

Although Plaintiff alleges that a valid contract exists, Landstar's liability may be limited. Rider D limits Landstar[5] from "liability for consequential damages resulting from unreasonable delays in transit" to $5,000.00. Plaintiff alleges that "Landstar's failure to ship the equipment as agreed" prevented Plaintiff from collecting $114,051.14. Compl., at ¶ 20. As discussed above, Plaintiff alleges that Landstar breached the agreement by delaying the equipment's transport *and* damaging the equipment. Rider D contemplates that liability be limited for consequential damages resulting from unreasonable delays. Because the language "resulting from unreasonable delays" is ambiguous as to whether the limitation of liability clause limits liability when both delay and equipment damage contributed to Plaintiff's consequential damages, the Court cannot dismiss Plaintiff's consequential damages claim. Butters Living Tr. v. SWEPI, LP, 4:12-CV-02010, 2013 WL 3679533, at *5 (M.D. Pa. July 12, 2013) ("[T]he patent ambiguities in this written contract at a minimum compel resort to parol evidence to provide contractual coherence, making a motion to dismiss on the pleadings inappropriate, and suggesting instead that this dispute may resolved in

---

[5] Landstar is referred to as the defined term "CARRIER" throughout the Services Contract, including in the Rider D. "When parties define the terms used in a contract, those definitions govern the construction of the contract." Eannarino v. Eannarino, 439 A.2d 760, 762 (Pa. Super. Ct. 1982). Rider D clearly references Landstar's limitation of liability.

7

the first instance only on summary judgment, where the court may consider undisputed matters outside the pleadings." ).

Plaintiff's claim for consequential damages survives dismissal, and the Court cannot find, at this juncture, that the clause limiting liability restricts Plaintiff to recovering only $5,000 in consequential damages.

**III.     Gist of the Action**

The Services Contract contemplates that Landstar will be liable for incidental and consequential damages arising from Landstar's negligent performance. "Pursuant to Pennsylvania's gist of the action doctrine,

> an alleged tort claim against a party to a contract, based on the party's actions undertaken in the course of carrying out a contractual agreement, is barred when the gist or gravamen of the cause of action stated in the complaint, although sounding in tort, is, in actuality, a claim against the party for breach of its contractual obligations.

Bombardier Transp. Holdings USA, Inc. v. United Chemi-Con, Inc., No. 2:16-cv-01903, 2018 U.S. Dist. LEXIS 47075, at *25 (W.D. Pa. Mar. 22, 2018) (quoting Bruno v. Erie Ins. Co., 630 Pa. 79, 106 A.3d 48, 53 (Pa. 2014)). "Accordingly, to evaluate the 'gist' of claims at issue, courts look to the nature of the duty alleged — if the duty is created by the terms of the parties' contract, then the claim sounds in contract, but if the duty is imposed as a matter of law by virtue of social policy, then the claim sounds in tort." Id.

Rider D limits damages arising from Landstar's delay. The duty to timely deliver is a duty forged through the Services Contract. Thus, the gist of the action doctrine precludes Plaintiff's damages claim, to the extent Plaintiff claims that Landstar's negligent delay caused damage. Regarding the equipment damages, however, Landstar had a societal duty to transport goods with reasonable care. Negligently colliding into a bridge is outside the scope of

reasonable care. Therefore, the gist of the action doctrine does not bar Plaintiff's claim for damages arising from Landstar negligently crashing the equipment into the bridge. At present, however, only consequential lost profit damages are ripe.

### IV. Plaintiff's Status as a Third-Party Beneficiary.[6]

Plaintiff asserts its status as a third-party beneficiary to the Policy between AFM and Balcan and argues that Plaintiff's status enables Plaintiff to enforce certain contractual rights against AFM. "[A]n action on a contract cannot be maintained against a person who is not a party to the contract unless the plaintiff is a third party beneficiary of the contract." Commonwealth, State Pub. Sch. Bldg. Auth. v. Noble C. Quandel Co., 585 A.2d 1136, 1140 (Pa. Commw. Ct. 1991). As a general rule, under Pennsylvania law, both parties to the contract must have indicated in the contract itself that the purported third-party beneficiary is an intended third-party beneficiary. Two Rivers Terminal, L.P. v. Chevron USA, Inc., 96 F. Supp. 2d 432, 450 (M.D. Pa. 2000). That intention must affirmatively appear in the contract itself. Scarpitti v. Weborg, 609 A.2d at 149 (citing Spires v. Hanover Fire Insurance Company, 70 A.2d 828, 830-831 (Pa. 1950)).

Here, the parties' intent to include Plaintiff as a beneficiary to the Policy (Doc. 3-2) does not appear in the Policy. The Policy does not mention Plaintiff, and Plaintiff does not allege in its Complaint that Balcan and AFM intended to name Plaintiff as a beneficiary to it. Accordingly, the Court must analyze whether an exception to the general rule bestows Plaintiff

---

[6] The Court need not delve into whether Plaintiff is a "carrier." The Court finds that Plaintiff fails, as a matter of law, to allege its status as a third-party beneficiary to the claims that have already ripened. Further, the Court finds it premature to determine, as a matter of law, whether Plaintiff is a carrier pursuant to the Policy's intended definition. As the parties have aptly argued, the Policy's definition of "carrier" could conceivably be interpreted in different ways. Evidence may be needed in light of this ambiguity. Further, it remains unclear whether the Policy intended to adopt the Carmack Amendment's carrier definition.

9

with third-party-beneficiary status. Pennsylvania has adopted Section 302 of the Restatement (second) of Contracts, which provides two exceptions to the general rule that both parties to the contract must have indicated their intent in the contract to include a third-party beneficiary:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Section 302 of the Restatement (second) of Contracts. In analyzing Section 302, the Court must first find that the "circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties." Scarpitti v. Weborg, 609 A.2d 147, 150 (Pa. 1992). Even assuming, *arguendo*, that compelling circumstances exist, neither exception warrants Plaintiff receiving third-party-beneficiary status.

Regarding the first exception, performance of the alleged contract will not satisfy any existing payment obligation to Plaintiff. The Policy insures Balcan against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE." Doc. 3-2. It does not insure against contractual obligations, which include unpaid invoices and delay damages.[7] As discussed above, Plaintiff's claim for physical damages caused to Balcan's equipment are not ripe. Suing to enforce coverage under the Policy for Plaintiff's outstanding invoices would be futile because the Policy does not cover that contractual obligation. At this juncture, AFM has not obliged itself to insure any damages to

---

[7] The Court acknowledges that Plaintiff pleaded that Balcan submitted an insurance claim to AFM for invoices and that AFM rejected this claim. Even taking these facts as true, the Policy clearly does not insure against contractual liabilities. And whether Balcan submitted the claim is irrelevant to whether AFM has a contractual obligation to pay on it.

which Plaintiff has an interest. Therefore, enforcing the Policy would not satisfy any obligation to Plaintiff.

Regarding the second exception, the circumstances do not indicate that AFM intended to confer to Plaintiff the benefit of the Policy at the time AFM contracted with Balcan. Insurance companies typically insure their clients against the risks associated with physical loss or damages. Some insurance policies contain contractual liability insurance, which indemnifies the insured from certain stated contractual liabilities. As articulated on the first page of Balcan's Policy, AFM insured Balcan against physical loss or damage, but not contractual liabilities. Thus, the Policy did not intend to insure Balcan for its contractual obligations with third-parties. Plaintiff seeks a benefit from the Policy that the Policy does not provide.

Having concluded that Balcan and AFM did not express their intent to include Plaintiff as a beneficiary to the policy, and that neither of the Section 302 exceptions apply, the Court finds that Plaintiff failed to plead sufficient facts warranting its recognition as a third-party beneficiary. Given that some of Plaintiff's potential damages have yet to ripen, the Court dismisses Plaintiff's Count V without prejudice.[8]

    **V.    Plaintiff's Unjust Enrichment Claim Against AFM.**

Where an unjust enrichment is found, the law implies a contract, which requires the defendant to pay to a plaintiff the value of the benefit conferred. <u>Schenck v. K.E. David, Ltd.</u>, 666 A.2d 327 (Pa. Super. 1995). The elements necessary to prove unjust enrichment are: "[1] benefits conferred on defendant by plaintiff; [2] appreciation of such benefits by defendant; and [3] acceptance and retention of such benefits under such circumstances that it

---

[8] The insurance policy insures against physical damages caused to Balcan's property. Should Balcan or AFM sue Plaintiff for damages incurred to Balcan's equipment, Plaintiff may have a claim as a third-party beneficiary.

would be inequitable for defendant to retain the benefit without payment of value." Id. at 328. (quoting Wolf v. Wolf, 356 Pa. Super. 365, 514 A.2d 901 (1986), overruled on other grounds, Vanbuskirk v. Vanbuskirk, 527 Pa. 218, 590 A.2d 4 (1991)).

Plaintiff pleaded no facts in its Complaint stating what, if any, benefit it conferred upon AFM. Further, the Court fails to see what facts Plaintiff could possibly plead given the chance to amend. AFM is a third-party insurer that did not contract with Plaintiff for any services, and Plaintiff has not alleged that it provided AFM with any services. Therefore, the Court finds that Plaintiff has not and cannot state a claim upon which relief can be granted and dismisses Count VI with prejudice.

### VI. Plaintiff's Unjust Enrichment Claim against Landstar

Plaintiff alleges that it compensated Landstar for its transportation services, and that Plaintiff did not receive adequate value for the payment it made. Compl., ¶¶ 13, 30, 33. Without providing adequate value, it would be inequitable for Landstar to retain the money that Plaintiff paid for those services. Viewing the allegations in the light most favorable to Plaintiff, Plaintiff has sufficiently alleged that Landstar obtained an unjust benefit from Plaintiff. Plaintiff's unjust enrichment claim against Landstar survives dismissal.

### ORDER

For the reasons set forth above, AFM's Motions to Dismiss (**Doc. 3**) is **GRANTED**. Accordingly, Plaintiff's claim for breach of contract as a third-party beneficiary to Affiliated FM Insurance Company's insurance contract with Balcan Plastics LTD is hereby **DISMISSED** without prejudice. Plaintiff's claim for unjust enrichment as a third-party beneficiary to Affiliated FM Insurance Company's insurance contract with Balcan Plastics LTD is hereby **DISMISSED** with prejudice.

Landstar's Motion to Dismiss (**Doc. 7**) is **GRANTED** in part and **DENIED** in part. Plaintiff's claim for damages stemming from the cost of inspecting and replacing Balcan's equipment, as well as Balcan's shipping delay damages, are hereby **DISMISSED** without prejudice.

Defendants' Motions to Dismiss are **DENIED** as to all remaining claims, including Plaintiff's claim for damages incurred against Landstar Ranger, Inc. for unpaid invoices and Plaintiff's negligence claim for consequential damages. Given that the bulk of Plaintiff's claims have not ripened, the Court will stay this action until all of Plaintiff's claims ripen or the statute of limitations on those claims expires. Plaintiff's counsel shall move the Court to reopen this case after all of Plaintiff's above-mentioned claims have ripened or expired. After the Court reopens this case, the Court will issue an order with the deadline to amend the Complaint, if Plaintiff so chooses.

IT IS SO ORDERED.

August 28, 2018                                                 s\Cathy Bissoon
                                                                                                             Cathy Bissoon
                                                                                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record